SAMUEL, Judge.
Plaintiff, as subrogee of the owner of residential premises here involved, brought *542 "tills suit to recover the sum of $992.50 which it had paid to the owner for damages •caused to the interior of the premises by smoke and oily residue originating in an ■oil furnace located in the basement. Plaintiff has appealed from a judgment dismissing the suit.
Defendant was engaged in the business •of selling fuel oil and heating equipment and servicing the latter. It had serviced the furnace here involved on an annual basis for more than ten years, at all times under the same oral agreement, during which time no repairs had ever been necessary. On October 17, 1958, acting under such an agreement, a defendant employee worked on the furnace. Fuel was also supplied.
The owner’s home was heated by a warm air system with an oil burner attached to the furnace. The amount of heat was controlled by a thermostat and a clock mechanism controlled the time of heating. Part •of the system is a motor driven fuel pump which draws oil out of the tank and forces it through nozzles which in turn spray the proper amount of oil into the combustion ■chamber of the furnace.
On October 17, the day the furnace was serviced, a defendant employee removed, ■cleaned and replaced the nozzles, electrodes and ignition points, burner fan and pump strainer. He also oiled the motor, made adjustment for a proper flame and tested the furnace by having it turned on by the owner’s son. It burned with a clear flame, the bottom of the furnace was dry, .and there was no indication of any mechanical defect.
The first time the furnace was used thereafter, on or about October 30, 1958, smoke and an oily residue filled the house •and damaged floors, walls, woodwork, rugs, draperies, etc.
The cause. of the excessive smoke and •oily residue was discovered by a defendant employee who was called immediately after the occurrence. He found that there had been a fire on the floor (as distinguished from the combustion chamber) of the furnace. At that time he was able to see that oil had accumulated on the floor of the furnace as a result of a leak in the fuel pump or in an integral part of that pump. He removed the pump, replaced it with a new one, brought the old pump back to the shop and there dismantled it. It was thus established that the malfunction had resulted from sediment underneath the points of the pressure valve which caused the valve to leak or drip fuel oil. When the furnace was turned on this accumulated oil ignited and burned, giving off a heavy black smoke which entered the upper portion or living quarters of the home through the warm air ducts. Considering the amount of oil which had accumulated, it is apparent that the pressure valve must have been leaking for several days.
The pressure valve is an internal part of the fuel pump. It could become defective, as a result of sediment deposit, at any time and regardless of the age of the furnace and this could cause either a leak or the complete stopping of the pump. In order to clean the valve, and to actually see a residue therein, it is necessary to remove the • pump from the furnace and take it apart. While this was done after the occurrence of the incident causing the damage, that is after it was apparent that a part of the pump had caused the trouble, it is an extensive operation and not the type of work ordinarily done in the field. As part of a routine servicing of the furnace the pump is tested simply by turning the furnace on. When this results in the burner atomizing properly and a clear flame, it is a sufficient indication that the pump is working properly-
There is no controversy concerning what work defendant was required to do under the agreement. Plaintiff testimony on this point, by the owner of the home, his wife and his son, is simply to the effect that defendant was to inspect the furnace and put the same in operating condition for the winter. Defendant’s explanation of the *543 agreement is more detailed and we are of the opinion that it accurately describes the work to be performed: defendant was required to clean the furnace and burner, oil the motor and test the performance of the furnace, leaving the same in efficient operating condition for the winter. The necessary work involved in cleaning the furnace and burner and testing are those details, above described, which were attended to by a defendant employee on October 17. The charge for the service was $7.50. Both sides agree that, if any repairs were necessary, defendant was to inform the owner of such need and to make the repairs, for compensation additional to the charge for the service, when ordered by the owner.
Plaintiff relies upon that rule of evidence known as the doctrine of res ipsa loquitur under which a plaintiff is not required to prove the cause of the damage or to allege or prove the particular acts of omission or commission from which the accident resulted. Day v. National-U. S. Radiator Corporation, La.App., 117 So.2d 104; Saunders v. Walker, 229 La. 426, 86 So.2d 89; Roy v. Louisiana State Department of Agr. & Immigration, 216 La. 699, 44 So.2d 822. Under that doctrine it is not sufficient for the defendant, in order to escape liability, merely to show it exercised due care; the burden is on the defendant to show absence of negligence on its part. Hawayek v. Simmons, La.App., 91 So.2d 49, 61 A.L.R.2d 1254; Northwestern Mutual Fire Association v. Allain, 226 La. 788, 77 So.2d 395, 49 A.L.R.2d 362; Beck v. United States Fidelity & Guaranty Co., La.App., 76 So.2d 120. Plaintiff also contends, alternatively, that the defendant failed to properly perform under its contract and was guilty of negligence which was the sole cause of the damages sustained.
It is the contention of defendant that the doctrine of res ipsa loquitur has no application because plaintiff has pleaded and attempted to prove both the cause of the accident and particular acts of negligence on the part of defendant (Rushing v. Mulhearn Funeral Home, La.App., 200 So. 52, 56) and that, in any event, defendant has properly performed under its contract and was not guilty of negligence.
Whether or not the doctrine is applicable is immaterial. We reach the same result in either event. For we are of the opinion that the defendant has carried the burden of exculpating itself from negligence. The agreement did not include or require a more detailed checking of the fuel pump and its component parts than the testing actually made by defendant; defendant properly performed its obligations under the agreement; and defendant has proved itself free from negligence.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.